IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DANIEL SZCZESNY,

    Plaintiff,

    v.

VILLAGE OF RIVER FOREST, *et al.*

    Defendants.

Case No. 20 CV 5661

**PLAINTIFF'S RESPONSE TO DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff DANIEL SZCZESNY, by and through his undersigned attorneys, respectfully responds to Defendants' Partial Motion to Dismiss Plaintiff's First Amended Complaint. Defendants move to dismiss Count I against Defendant Scheiner and Count III against Defendant Village of River Forest. Defendants' Motion should be denied as Defendants make the same arguments as they made in the previous motion and fail to recognize the substantive amended allegations. In support, Plaintiff states as follows:

**I.    Motion To Dismiss Standard**

Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, *Twombly* does not require a court at the motion-to-dismiss stage to consider whether the factual allegations are probably true. *Ashcroft,* 556 U.S. at 696. As discussed below, Plaintiff's complaint goes well beyond meeting the pleading standards of FRCP 8(a) and therefore, Defendants' motion to dismiss should be denied.

## II. Introduction

The Court's Order on the previous motion to dismiss, stated regarding Count I, "The complaint does not raise a reasonable inference that Scheiner had any knowledge of the union letter or took any adverse action due to Szczesny's protected speech." (Dkt. 25 at 14.) The Court also found regarding Count III, "Count III is dismissed as to Scheiner, however, because the complaint does not plausibly allege that she purposefully interfered with Szczesny's job opportunities." (Dkt.25 at 20.) Plaintiff's First Amended Complaint specifically addressed the Court's Order by adding specific and substantial allegations regarding Defendant Scheiner's involvement. Defendants concede that Plaintiff's Amended Complaint sufficiently alleges Scheiner's knowledge. (Dkt. 25 at 4.)

The Court further found on Count III regarding the Village, "The Village does not present any argument for its dismissal from the intentional-interference claim, so it remains a defendant." (Dkt. 25 at 20.) Defendants attempt a second bite at the apple by now arguing that it should be dismissed from Count III.

## III. Additional Allegations Added to First Amended Complaint

In amending the Complaint, Plaintiff added the following allegations, which relate to Defendant Scheiner's knowledge of Plaintiff's protected activity as well as her participation in the adverse actions against Plaintiff, including that she specifically authorized the false investigations

2

into Plaintiff, purposefully interfered with Plaintiff's job opportunities, and knowingly tried to sabotage Plaintiff's character and fitness as an attorney.

> 79. On or about August 20, 2019, Defendant O'Shea circulated and shared the union letter with members of the Village Administration including then-Village Administrator Eric Palm and Defendant Scheiner.
>
> 94. Defendant O'Shea made Defendant Scheiner aware that Szczesny would not "provide information regarding complainants who had issues with the vehicle and that he either failed to provide the information or refused to provide the information."
>
> 95. Defendant Scheiner was aware that Szczesny had invoked union-privilege regarding the names of and his communications with those complainants, and that Defendants Swierczysnki and O'Shea were recommending discipline because of this invocation of privilege.
>
> 96. Defendant Scheiner later agreed to and supported a formal investigation of Szczesny based upon his knowledge of privileged union complainants and their communications regarding the Department's untimely response to Car 4's auto-park malfunctions.
>
> 97. Defendant Scheiner, in conjunction with Defendant O'Shea and Eric Palm, made the decision to retain counsel for the purpose of formally investigating and interrogating Szczesny and other union board members for their knowledge of and role in the August 19, 2019 union letter.
>
> 103. On August 29, 2019, Defendant O'Shea sent a reply email to Szczesny and the other union board members within the email thread titled, "FOP Correspondence of 19 August 2019." O'Shea's email notified Szczesny and the other board members that O'Shea would "be working with the Village Administrator's Office and the Village's lead labor attorney to make decisions on what further actions and responses will be taken or initiated." At the time, Defendant Scheiner was part of the Village Administrator's Office as both the Assistant Village Administrator and the Director of Human Resources.
>
> 107. On or thereabout August 30, 2019, the Sergeant's letter attacking the union and union board – written and signed in their official capacities as Sergeants of the River Forest Police Department – was forwarded by Defendant Labriola to Village Administrator Palm, Defendant Scheiner, and Defendant O'Shea.
>
> 116. Defendant Scheiner was aware of Defendant O'Shea's communications with Wisniewski regarding disciplining and investigating Szczesny and other union board members because of their August 19, 2019 union letter.

118. Defendant Scheiner knew of and sanctioned the Village's attempts to force Szczesny to sign the "Separation Agreement" and "expected" Szczesny to sign the agreement in lieu of termination.

128. Defendant Scheiner had already been informed of Szczesny's resignation on October 1, 2019 by Defendant O'Shea and knew the information stating Szczesny was on Administrative Leave on October 2, 2019 was false.

129. Defendant Scheiner, acted in both her capacity as Assistant Village Administrator and as Director of Human Resources when she knowingly, intentionally, and falsely approved of listing Szczesny as having been placed on Administrative Leave on October 2, 2019 both in the memorandum, and in the Village's payroll system.

130. Defendant Scheiner also knew that Szczesny had not been served with any notices of investigation or interrogation at any point in time.

131. Defendant Scheiner knowingly and intentionally accepted the memorandum from Defendant O'Shea which was dated October 2, 2019. Defendant Scheiner knowingly and intentionally placed the false document in Szczesny's personnel file.

135. Defendant Scheiner knowingly and intentionally collected false and misleading documents from Defendant O'Shea and James Greenwood to place in Szczesny's personnel file during this time. Defendant Scheiner accepted materials allegedly dating from as far back as 2013 without questioning why such materials had never been presented to her before.

136. Defendant Scheiner knowingly and intentionally removed, omitted, or otherwise failed to include other awards, performance reviews, or commendations in Szczesny's personnel file that Szczesny had earned during his tenure with the Village.

137. Defendant Scheiner did so in an attempt to negatively skew Szczesny's file and make him appear to be a bad candidate for employment if a future employer were to request the file.

156. Defendant Scheiner knowingly and intentionally showed O'Malley the false memorandum from Defendant O'Shea dated October 2, 2019 that stated Szczesny had been placed on Administrative Leave at the time of his investigation, notified to appear for an interrogation, and placed under investigation.

157. Defendant Scheiner knowingly and intentionally showed O'Malley false documents pertaining to alleged internal investigations 19-1, 19-2, and 19-3, which O'Malley summarized in his report.

178. In December 2021, Szczesny graduated from law school, applied for admission to the Illinois Bar, and applied to take the Illinois Bar Exam. As part of

this process, Szczesny completed numerous forms including forms requiring details of former employment and employers.

179. On December 7, 2020, Szczesny completed and submitted his application.

180. On March 4, 2021, Szczesny's application was downloaded by the Admissions Office and the office began processing the application.

181. On April 1, 2021 Counsel Yvette Heintzelman for the Village called Szczesny's counsel and advised her that the Illinois Board of Admissions to the Bar was seeking information about Szczesny's employment at the Village. Heintzelman stated that a non-response from the Village would "not be good" for Szczesny's application.

182. On April 2, 2021 Heintzelman forwarded Szczesny's counsel a letter from the Illinois Board of Admissions to the Bar requesting information about Szczesny's employment at the Village of River Forest. The letter was dated March 1, 2021.

183. On April 6, 2021 Szczesny was notified by the Illinois Board of Admissions to the Bar that he had successfully passed the Illinois Bar Exam.

184. On April 6, 2021, Szczesny also received a letter via the Bar Commission's online portal from the Illinois Board of Admissions to the Bar stating his "character and fitness application contains one or more matters of concern to the Board and Committee on Character and Fitness." In the letter, Szczesny was referred to the Committee on Character and Fitness for a mandatory interview to be approved to be barred.

185. That day Szczesny called his bar processor, Tara Henrikson, via telephone and spoke to her about the referral of his application to the Committee on Character and Fitness. Henrikson advised him that the referral was due to the Village of River Forest's refusal and failure to respond to numerous inquiries from the Board of Admissions to the Bar on the course of the last month. Henrickson advised Szczesny she had called the Village at least ten times and sent three hard copies of letters seeking to verify Szczesny's employment there with no response.

186. On April 16, 2021, Szczesny was forced to attend and participate in a Character and Fitness Hearing due to the Village's knowing and intentional efforts to sabotage his ability to be barred. Defendant Scheiner, acting as both the Village's Director of Human Resources and the now-promoted Acting Village Administrator, was responsible for both the decision to ignore the Board of Admissions to the Bar and failure to provide complete and truthful information when requested.

IV. **Plaintiff Has Sufficiently Alleged Claims Against Defendant Scheiner**

Plaintiff's speech on behalf of the FOP Executive Board was the impetus for Defendants' adverse actions taken against Plaintiff. Plaintiff has sufficiently alleged that Defendant Scheiner

was aware of that speech and participated in the retaliation against him specifically for that speech, including interfering with his future employment prospects.

Under the First Amendment, an adverse action is any conduct that would chill Plaintiffs' exercise of free speech. The Government "may not deny a benefit to a person on a basis that infringes ... constitutionally protected interests--especially . . . . freedom of speech." *Mosely v. Board of Educ. of City of Chicago,* 434 F.3d 527, 534 -535 (7th Cir. 2006). "The alleged injury need not be great in order to be actionable. *Id.* Nor is a "tangible detriment" required. *Id*.

In this case, Plaintiff has alleged that he was subjected to false accusations, false investigations, threats of termination, threats to other members of the Union board if he did not resign, threats of investigations, interference with his position and duties as Union President, threats to his future legal career and career as a police officer, schedule changes, false information placed in his personnel and provided to future employers, and attempts to undermine his character and fitness as an attorney. (FAC ¶ 86-186).

In the employment context, the Seventh Circuit has held that "even minor forms of retaliation can support a First Amendment Claim, for they may have just as much of a chilling effect as more drastic measures." *Smith v. Fruin*, 28 F.3d 646, 649 (7th Cir.1994), *see also DeGuiseppe v. Village of Bellwood*, 68 F.3d 187, 192 (7th Cir.1995). In *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982), the Seventh Circuit concluded that "we cannot say as a matter of law that the exercise of First Amendment rights by public employees cannot be deterred by subjecting employees who exercise them to harassment and ridicule through selective enforcement of work rules." "The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." *Id*. The United States Supreme Court in *Burlington Northern & Santa Fe Ry. Co. v.*

*White*, 548 U.S. 53, 68 (2006) held that "materially adverse [] means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 ("[W]e believe this standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination."). *See also McGill v. Bd. of Ed. of Pekin Elementary Sch. Dist. No. 108 of Tazewell Cty., Ill.,* 602 F.2d 774 (7th Cir. 1979); *Burruss v. Cook Cty. Sheriff's Office,* No. 08 C 6621, 2011 WL 856635, at *6 (N.D. Ill. Mar. 9, 2011); *Pieczynski v. Duffy*, 875 F.2d 1331, 1335 (7th Cir. 1989). In *Yoggerst v. Stewart*, the Seventh Circuit stated that a verbal reprimand followed by the written memorandum placed in [plaintiff's] personnel file may have had a chilling effect, which is legally cognizable, upon her exercise of free speech." 623 F.2d 35, 37, 39 (7th Cir.1980).

In this case, Scheiner agreed to and supported a formal investigation of Szczesny based upon his knowledge of privileged union complainants and their communications regarding the Department's untimely response to Car 4's auto-park malfunctions. (FAC ¶ 96.) Scheiner made the decision to retain counsel for the purpose of formally investigating and interrogating Szczesny and other union board members for their knowledge of and role in the August 19, 2019 union letter. (FAC ¶ 97.) Scheiner worked with Chief O'Shea and the Village labor attorney to make disciplinary decisions regarding the August 19, 2019 union letter. (FAC ¶ 103.) Scheiner was aware of the Sergeants' letter attacking the union and union board, and the Sergeants' efforts to recommend trumped up discipline against Plaintiff. (FAC ¶ 107, 116.) Defendant Scheiner knew of and sanctioned the Village's attempts to force Szczesny to sign the "Separation Agreement" and "expected" Szczesny to sign the agreement in lieu of termination. (FAC ¶ 118.) Scheiner knew that Szczesny was no longer employed on October 2, 2019 and that the information stating that Plaintiff was placed on Administrative leave on August 2nd was false and placed it in his personnel

file and in the payroll system anyways. (FAC ¶ 128, 129.) Defendant Scheiner knowingly and intentionally accepted the memorandum from Defendant O'Shea which was dated October 2, 2019. Defendant Scheiner knowingly and intentionally placed the false document in Szczesny's personnel file. (FAC ¶ 131.) Defendant Scheiner turned a blind eye to Defendant O'Shea and James Greenwood placing false and misleading documents in Szczesny's personnel file and intentionally removed positive reviews and commendations from his personnel file in order to negatively skew his file and affect his future employment prospects. (FAC ¶ 135, 136, 137.) Scheiner knowingly gave false documents to Plaintiff's prospective employers. (FAC ¶ 156, 157.) Scheiner was responsible for the decision to ignore the Board of Admissions to the Bar and failure to provide complete and truthful information when requested despite the Village's knowledge that failing to do so would harm Plaintiff's chances to be admitted as an attorney. (FAC ¶ 181-186).

Thus, Plaintiff's First Amended Complaint raises a reasonable inference that Scheiner had any knowledge of the union letter and took adverse action due to Szczesny's protected speech, including purposefully interfering with Plaintiff's employment opportunities. Therefore, Defendants' partial motion to dismiss Plaintiff's First Amended Complaint must be denied.

**V.     The Village's Motion to Dismiss Count III Should Be Denied**

Defendants attempt a second bite at the apple by now arguing that it should be dismissed from Count III. Defendants erroneously argue that Defendants O'Shea and Scheiner were not acting in the scope of their duties when responding to Plaintiff's background request information, therefore, the Village cannot be held liable.

Under Illinois law, Plaintiff's claim of intentional interference against the Village pursuant to *respondeat superior* is proper where the individual Defendants' conduct was within the scope of their employment. *Holder v. Ivanjack*, 39 F. Supp. 2d 965, 971 (N.D. Ill. 1999). Conduct is

within the scope of employment if: "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the master." (*Id.*) In *Holder*, the Court denied the defendants' motion to dismiss finding that the police officer defendants were acting in the scope of their employment when they assaulted and battered an African-American male during their response to a shooting incident. *Id*. at 972.

Similarly, in this case, Plaintiff alleges that Defendants' actions of providing background information to prospective employers and the bar committee is of the kind they are employed to perform. For instance, Plaintiff alleges Scheiner was employed by the Village as the Assistant Village Administrator, Acting Village Administrator, and Human Resources Director. (FAC ¶ 6.) Plaintiff further alleges that Scheiner was a policymaker for the Village. (FAC ¶ 7.) Plaintiff alleges that Defendants were acting under color of law. (FAC ¶ 8.) Plaintiff alleges that Defendant Scheiner, acted in both her capacity as Assistant Village Administrator and as Director of Human Resources when she knowingly, intentionally, and falsely approved of listing Szczesny as having been placed on Administrative Leave on October 2, 2019 both in the memorandum, and in the Village's payroll system. (FAC ¶ 129.) Plaintiff also alleges that "Defendant Scheiner, acting as both the Village's Director of Human Resources and the now-promoted Acting Village Administrator, was responsible for both the decision to ignore the Board of Admissions to the Bar and failure to provide complete and truthful information when requested." (FAC ¶ 186.) Plaintiff further alleges that Defendants actions occurred substantially within the authorized time and space limits. O'Malley went to the Village to perform a background check on Szczesny. (FAC ¶ 155.) The Committee on Character and Fitness called the Village at least ten times and sent three hard copies of letters. (FAC ¶ 185.) Defendants' actions were also actuated, at least in part, by a purpose

to serve the master. As discussed above, the Defendants' actions were taken in response to requests for background and personnel file information, the events occurred at the Village, and the Defendants were acting in their capacities as Village administration. Thus, the Defendants' actions were not performed purely in self-interest. Therefore, the Village can be liable under a theory of respondent superior for Defendant Scheiner and O'Shea's actions to interfere with Plaintiff's future employment opportunities and Defendants motion should be denied.

**VI.     Conclusion**

For the foregoing reasons, Defendants' Partial Motion to Dismiss should be denied.

Respectfully Submitted,

*/s/ Heidi Karr Sleper*
_____
Attorney for Plaintiff

Heidi Karr Sleper, Esq. Atty No. 6287421
KURTZ, SLEPER & EXLINE, LLC
610 W. Roosevelt Rd., Suite A2
Wheaton, IL 60187
Phone: (630) 323-9444
Email: hsleper@kselegal.com

CERTIFICATE OF SERVICE

       The undersigned certifies that the foregoing document was served via ECF on August 20, 2021 to the below listed attorneys.

Lori A. Vanderlaan, Atty No. 6230432
Allie Burnet
Best, Vanderlaan & Harrington
25 E. Washington St., #800
Chicago, IL 60602
Email: lvanderlaan@bestfirm.com
Email: aburnet@bestfirm.com

                                                  */s/ Heidi Karr Sleper*
                                                  _____